May I begin? I'll probably reserve five minutes for rebuttal. May it please the Court, my name is Francis Alexander Malafie with the law firm Francis Alexander. I have the pleasure of representing the plaintiff in the underlying case and also the appellant in the case before this Court. This case is a very significant case because it dealt with an issue of how the Court considers the deposit copy in a copyright case and the significance that the deposit copy has. From plaintiff's perspective, appellant's perspective, this case has always been about giving credit where credit's due. And we continue to bring this case to this Court with that motivation and that perspective. When we consider works of art, things that are protected by copyright protection, we like to consider what's the best evidence and what can we compare. The issue, the main issue that we had is that in our case, in the lower court, the trial court did not allow the full composition of Taurus to be considered by the jury. And to be clear, we make no claim that we have any sound recording copyright. The whole issue in this case was does the sound recording embody the composition. And if we look at the history of copyright law, going back to 1908 before the 1909 Act, I can clearly show to this Court that, in fact, the 1909 Act, which is relevant to this case, does look to and can look to mechanical reproductions and whether or not the composition can be embodied by the jury. And it's not recording. When I looked at the 1909 statute, it seems Section 9, which is you secure a copyright by publication, and Section 11, which is, I guess, irrelevant in your case, and Section 11 to secure a copyright by deposit, it seemed that the sections were referring only to the sheet music. For example, Section 9 says you can secure a copyright by publication with the notice of copyright required by this Act affixed to it. So it seems they're talking about the sheet music, not about a performance. Am I wrong on reading Section 9, Section 11 as referring to the sheet music? I do believe it's wrong, and I'll share with you why. Much later, Congress basically, from our perspective, and the trial court agreed to Judge Klausner, that our piece was not published. It was unpublished in consideration of the 1909 Act. So you secured copyright only under Section 11. Is that correct? Section 11 is the relevant section applicable to our issue here. But if I step through briefly, I can explain why, that this is more or less an archival issue and not, does not define the scope of the copyright. But I read that in your briefs, but my question was, the only way you secured copyright under Section 11 is by the deposit. So how could it be archival? That's the only thing that had a copyright and the only securing of copyright that occurred. It's a little different. Judge Klausner, the judge in the trial court, admitted, not admitted, but held that plaintiff in this case had State common law copyright in the song chorus. And if we look to Section, excuse me, Section 3, it states explicitly in the 1909 Act that common law copyright of a work cannot be shrunk by Federal registration. Judge Klausner acknowledged that this song chorus had State common law copyright protection. 1909 Act, Section 3, states that it cannot be shrunk by Federal registration. The Federal registration of a State common law copyright does not constrain or restrict the copyright that already subsists in that underlying composition. So the cases that say that once you have Federal copyright, you no longer have State copyright, what do we do with those? Well, I think those cases help us because it doesn't shrink. It does not shrink the copyright. It just gives you Federal registration and also it's a jurisdictional requirement to get the benefits of Federal, of a Federal copyright registration. And I think that the actual quoted language of Section 3, quote, the copyright provided by this Act shall protect all the copyrightable component parts of the work copyrighted and all matter therein in which copyright already subsists, excuse me, in which copyright is already subsisting. So is your argument that the 1909 Act with respect to musical compositions provided common law, Federalized common law copyright? Our position is that if, if. Well, no, I'm asking you. Can you repeat your question, Your Honor? Did it Federalize common law, State common law copyright protection? I believe once you register, it gives you Federal jurisdiction and you have Federal jurisdiction. To Federal jurisdiction for what? But it does not shrink the copyright you have in the State common law. Well, that's not my question. So Federal jurisdiction, and what do you get with that Federal jurisdiction? Well, I think it depends on many different factors, whether it's published, whether it's unpublished, how the Court looks at it. In our case, it was unpublished. It has to be unpublished here. What's that? It's unpublished here. Yes. So what do you get? I'm asking you, what do you get with it? You're trying to – you just said a minute ago that you can't – that Congress didn't shrink the common law copyright protection. Well, for one thing, we would get the actual composition at the moment it was created by that author. And that goes back to, if you look at the historical timeline, it goes to the Whitesmith Music Publishing case, which was 1908. And to think about these things logically and historically, the Whitesmith Music Publishing case in 1908, before the 1999 Act, and remember, copyright law is always following technology. At the time when the – at the time in 1908, they just started having things like phonographs, just started having things like piano rolls. The case of White Music Publishing said mechanical reproductions were not copies of composition. So they weren't infringing. And obviously, the 1909 Act said, no, that is infringing. Exactly. But that doesn't tell us anything about the scope of the – you know, what is copyrighted, which is what the district court was focusing on. I'm looking at – I suppose you're – you're talking about Section 2, which says, when you say it doesn't shrink copyright, is that what you're looking at, Section 2? Section 3, Your Honor. So Section 3. And you're saying that when it says all the copyrightable component parts of the word copyrighted, that refers to State copy – State common law copyright. Is that your position? That is. Okay. So there's a State common law copyright comes into effect when the work is performed. Correct? It depends. So there was revisions that happened later in the – I think the 90s, where Congress – there was issues about how this would be affected, published or unpublished. And Congress came back and said that even if it was played or – so long as it was not published in musical – in sheet music, it would be considered unpublished. So in our situation, it's not an issue in dispute. Defendants don't dispute it. This is an unpublished work. Unpublished, right. So – and there's a lot of issues there, but not an issue before this work. And so you're saying that under, I guess, Section 2 and Section 3 working together, that the – whatever was copyrighted under State common law would then be copyrighted under Section 11, when the sheet music was deposited. That's absolutely correct. Is there any case – this is – there's no case that supports that. Is that right? I mean, ABCO looks at the difference between a State common law copyright and a Federal copyright. I think it's a little different, but I do understand where you're going with it. And that's a very important case in this determination. But the 1909 Act, Section 1A, which we discussed, it says a copyright or musical composition can exist in any system of notation or form of record in which the thought of the author might be recorded and from which it may be read or reproduced. That's what's critical here in the 1909 Act. So when we're asking about the scope of what does it actually have when we – it gets Federally registered, well, again, the 1909 Act specifically says, 1A, any system of notation from which it may be reproduced or recorded – read or reproduced. So when it's published – so when the sheet music is published under Section 9, which secures a copyright, you're saying that it would – the copyright would actually be beyond the sheet music, but any prior performance, if that was protected by State common law. Well, I don't believe Section 9 is applicable here. In this case, what's applicable is that we had a sound – we had a record for the – Well, they're both talking about two different ways to secure a copyright. I'm just trying to understand the theory. I mean, Section 9 is obviously concerned about notice to the public as to what's copyrighted. And so my question is, you can secure a copyright by publication with the affixing the notice of copyright on the page. Is what's copyright, protected by copyright, include any prior State common law copyright? In our case, we receive copyright protection because it already subsists in the California State copyright that we had when the song was recorded and placed on a recording in Section 7. Right. I'm asking a hypothetical question about Section 9, because the interpretations would have to be consistent between Section 9 and Section 11. I think Section 9 is not as applicable to our case, and it wasn't an issue in dispute in any way. Right. So you're not able to give me a response to how I should read Section 9, because that would definitely color my ideas about how we should read Section 11. Okay. Well, it's something that I will look in my rebuttal and address to you. Okay. Thank you. May I proceed? Yes. Go ahead. I think that, you know, if we – Maybe you should – I understand the – we understand the legal argument you're making, but how did this play out at the trial? Well, at the trial, the issue was very simple. We were never – the jury never heard the very thing at issue. In other words, there was this artificial, bizarre comparison of a deposit-copy lead sheet. And the deposit-copy lead sheet in our case was inaccurate, and it was not the best evidence of what was actually the scope of copyright protection. And the cases which we have shown and the cases which this Court has looked at, and for 108 years – it's a long time, 108 years – this jurisdictional requirement, the archival requirement of putting a deposit-copy into the office never defined the scope of copyright. Weren't those all Section 9 cases, though, by publication? It was other than Three Boy, which – Three Boy Music Company, which was apparently a Section 11 case, and where the Court said, no, in fact, for jurisdictional purposes, no, in fact, what was argued was what was in the deposit-copy. All the other cases you cited that I can recall were Section 9 cases. Well, I think there's many cases we cited. I can't at this moment go back and tell you whether or not they were Section 9 or not. But isn't that crucial? Because Section 9, the publication – it's the publication that secures the copyright, and what was put on deposit is only for deposit. It is archival. Whereas for Section 11, it's the deposit itself that secures the copyright. Even though the deposit itself secures the copyright, that's jurisdictional nature and does not define the scope. In every case that we have shown, in every case before this Court, even the Sixth Circuit and other courts have never held, and the Supreme Court have never held, that the deposit-copy in any way defines the scope of the copyright protection. I didn't see any case where it was – where the copyright was secured by the deposit that a court held that. Can you cite me a case? I'll double-check on that, Your Honor, and supplement if I may. But the issue here is that this is the first time that the Court in 108 years looked at the deposit-copy as defining the scope. It's never been done before. And the reason that it's artificial and bizarre is because we know that there's a State common law copyright protecting what was the actual composition, which was embodied in the recording. And so in this instance, it was the first time that it was the exact notes of the deposit-copy, the exact notes that were used. Everyone knows the deposit-copy is a lead sheet. It's bare. Even if you look at the Stairway to Heaven's deposit-copy, it's 400 notes. The actual Stairway to Heaven is 11,000 notes. It's inherently bare. Even in the Blurred Lines case, which is before this Court, I don't think an opinion has been issued yet, the very same issue came before that, this Court, and it was an issue of, well, how do we consider this? And that was the first time the scope was the deposit-copy was reviewed and considered, well, how do we address this with the jury? And they basically said that so long as it's represented in some way, represented in some way in the deposit-copy, there can be rerecordings, reproductions and things used and played in front of the jury. In our case, in our case, they said no, the judge said no, only the exact notes of the deposit-copy will be considered and can be played or reproduced. And we can use no sound recordings, which were the very thing at issue. But one thing to not lose sight of is that Jimmy Page, Robert Plant, no one went to the Copyright Office and pulled out a deposit-copy lead sheet. No one went to the Congress, the Library of Congress, and looked at that. The very thing at issue was heard by Jimmy Page and Robert Plant. The very thing at issue was performed in concerts where they were performing at. The very thing at issue, the song that we want to compare, that should have been compared, was in Jimmy Page's record collection, which he admitted to. And so — Isn't that awesome? That goes to access as well, doesn't it? Of course it does. And the issue with access is the higher degree of access, the lesser degree of substantial — The jury found in your favor on access. It did. But nonetheless, we were not given the inverse ratio rule. The inverse ratio rule is important because the higher degree of access, the lesser degree of substantial similarity. But does that mean since they found no substantial similarity, does it really matter? Because if there's no — if the jury finds no substantial similarity, it doesn't matter how much access there was. Well, but again, the inverse ratio rule says that if there's a higher degree of access, there's a lesser degree of substantial similarity. But they found no as to is there substantial similarity. They said no. Because they weren't informed of the proper instruction. This was a jury instruction that was wrong. They should have been informed. They should have been able to hear the recording. And the recording is not substantially similar. It was nearly virtually identical. And we weren't able to play the very thing that Jimmy Page and Robert Plante had access to. We had to have a reproduction that was artificial, bizarre, and not consistent with the very thing that everyone knew we were comparing. In other words, we were comparing apples and oranges. We were comparing a 400-note lead sheet with a fully produced Stereo to Heaven, and — The access evidence was equivocal at best, wasn't it? I don't believe so. When you have so much, you have artists — remember, Led Zeppelin opened up for — They put people in places at the same time, but no direct proof that the performance itself was heard. We had testimony at the concert, the first concert where they opened, that that would have been a song that they would have played, and that one of the witnesses testified to that. We have evidence that it was in his record collection, Jimmy Page's. He testified to that. We have evidence that he says they moved him on an emotional level. He had five of their albums. The song one, Fresh Garbage, was performed — Oh, thank you. Want to save some time for rebuttal? Yeah. Fresh Garbage performed the concert. The fourth song was Taurus. You know, we believe the access was very strong in that regard. We'll save some time for rebuttal. Okay. Thank you. Good morning, and may it please the Court. My name is Peter Anderson, and I represent the defendants. With me is Helene Freeman, who is co-counsel with Jimmy — representing Jimmy Page, Robert Plant, and John Paul Jones. I'd like to reserve three minutes on Warner Chapel's appeal on the attorneys' fees issue. To clarify, first off, I read what's now referred to as 10 and 11 in the 1909 Act just slightly differently. 10 says any person entitled to their two may secure copyright by publishing with a notice. 11 says such person may get that copyright by deposit. So I read 11 as being the follow-up to 10. 12, which is what was applicable here, is works may also be had — or, excuse me, copyright may also be had in works that aren't offered for sale by deposit and without the publication. Counsel's argument on Section 3 of the 1909 Act is precluded by this Court's decision in Batjack v. Home — Good Times Home Video. Batjack specifically held that when Section — when the 1909 Act refers to other copyrights, it's referring to Federal copyright. And the — and there's one exception, I believe it's Section 2, where it says this statute doesn't supplant common-law copyright. That's because we had a dual system. Each State could choose to have common-law copyright. Some States didn't. The scope in the State common-law copyright could be quite different. It was up to the legislatures in that State. The very concept that getting a Federal copyright under the 1909 Act would Federalize the common-law copyright just doesn't make sense. First of all, that's not what ABCO says. That's not what the Supreme Court said in Golden, if I remember correctly. And I'll check that site. The — getting a Federal copyright under the 1909 Act, the common-law copyright went poof. And the idea that it would Federalize it so that — I mean, how would that work? If you have a State that doesn't have common-law copyright and then you get a Federal copyright under the 1909 Act, what's the common-law copyright? How does it continue to exist? If you have Minnesota give some rights under common-law copyright and another State give different rights, right now we're seeing this litigation with streaming. And I think it was New York that just held New York common-law copyrights don't provide certain rights. I believe there was another State that was asked by the Federal courts to opine on this. California has been asked to opine what the common-law copyright is. Roberts. Yes, I know. Yes, I know you know, Your Honor. And so you have — how does that work, where you take — some States have no common-law copyright and it all becomes part of the Federal copyright. It just doesn't make sense. Once there's a Federal registration, the common-law copyright goes poof. The inverse ratio argument — So let's just back up just before you move to the inverse ratio. So then the scope of the copyright protection is defined by the deposit copy? Yes, Your Honor, and that's very clear. Strictly? Absolutely. Well, strictly subject to an expert telling us what it means. And so, for example, here, the judge said to Mr. Hansen, play it as you read it. And he played it as he read it. He prepared recordings before the trial, which were presumably how he read the deposit copy, and he testified that our experts, their recordings were correct renditions of the deposit copy. If a musician looks at it, let me tell you — give you an example of there was a disagreement that became irrelevant. There's a mark on the deposit copy that means repeat. And there was a question. One of our experts said, well, you go back to the very beginning. Another expert said, no, you go back, like, two bars or something. And that is an expert question as to how you interpret a writing that was deposited with the Copyright Office as the copyrighted work. And so — and that's exactly what our judge did here. He told Mr. Hansen, if it's there, if you — you read it and play it as you read it. And Mr. Malify then, a few pages later, asked Mr. Hansen, are you a musician, a session musician with years of experience? Can you understand this and play it as you read it? And he said yes. And that's what he did. Kagan. Let me ask you. So would it have been improper for the district court judge to have allowed a sound recording about the same time as the — when it first came out in the late — what was it, late 68, 69, somewhere in there? Well, let me put it — Just let me ask — let me follow through on what I was thinking. Sure. My apologies. Would it have been improper for the district court to have allowed a sound recording and then the expert could opine that the elements of what was in the deposit copy are embedded or, you know, are clearly displayed or heard in the sound recording of that time? Would that have been improper? It — Because it does seem kind of odd. You know, you never — the jury never gets to hear the sound — a sound recording of TARS, only gets to hear the core elements of the first part of it. I think it was Van Morrison who said every performance of a composition is different. And if — under the established principles of copyright law, if you perform something differently and it's significant, then you have a chance for a new copyright. Okay? That wasn't done here. And — Would you have to lay a foundation that the sound recording that you're hearing that was created years before was actually created from the deposit copy? Well, I think part of this would be under — I'm just — — hypothetical part — Because one of the things he complains about and, you know, what you read about is that how are they ever going to — you know, Robert Plant, whoever wrote Stairway to Heaven, didn't go get the deposit copy of TARS. You know, there is an established — Right? Yes, but there's an established principle in copyright that you can copy from a copy. And Judge Ikuda's decision in D.C. Comics says that, recognizes that. If someone goes out and copies the story of Lion King from the musical, they never have to see the movie. The copyright that you're suing on in that hypothetical is in the movie. You compare the movie to the defendant's work. The intervening version that — we're talking about intangible copyrights. Yes. Intangible rights. The intervening version is technically irrelevant because no part of it that is different from the copyrighted work is — can be — copying any part of that that's different from the copyrighted work is not an infringement of the copyrighted work. So he likes to say that it's absurd, but it's established copyright law. That's how it works. The copyright isn't in the composition that — however it was performed that day. Now, that copyright, that sound recording, if it was done by a defendant, might be substantially similar to the copyrighted work, and so it would be relevant in that situation. But it would show access, though, right? I'm sorry? It would be relevant to access. Well, it depends. I mean, they made this argument about sonic landscape. If Your Honor is talking about a sound recording of the plaintiff's work compared to the sound recording of the defendant's work to see if there are similarities that you think — Right. It would be evidence if they were, say, substantially identical, it would be evidence that the alleged infringer had access to the performance, which was evidence of what was in the deposit copy. If they were probative of actual copying, that's absolutely right. And so, for example, and this is another general principle of copyright law, the common error, these non-musical, non-copyright things that might create their footprints, that there was some, you know, access here. And so, for example, if you had a very unique set of instruments in the two recordings, you know, someone could say, well, you know, they put a bassoon with this or something, and maybe something else, some foreign, you know, instrument that would suggest that no one else has ever used, that could give someone a basis to infer access. It has nothing to do with whether a copyrightable material was taken. It's a question of inferring access. Their problem was they came in with experts who said, my God, there's an acoustic guitar and Baroque instruments, and we came in and said, well, did you do any research to determine, you know, what's the extent of uses of acoustic guitars and Baroque instruments in recordings in the 60s? And they said, well, we don't need to. It's commonplace. So that's not probative of access in any way. And they went on access, so it's irrelevant in any event. My question was, there's another case on appeal where I think the trial court judge did what I was suggesting. Well, the trial court judge, he did something a little bit different, and he didn't allow the sound recordings. He allowed them, as I understand it, to create recordings based on the deposit copy, and in doing that, one of the experts, maybe two of them, said, as an expert, I look at that deposit copy, and I say any musician would have also added this other music. And the judge allowed that. And that's where it went off the rails. Now, here, what our judge did was said, play it as you read it, and they read it the same way we read it. Now, I'd like to get back to your question. I think it would be an abuse of discretion to allow the sound recordings. But the question in this case, the question really is, was it an abuse here, because we won. Was it an abuse here to disallow them? And clearly not. Everyone's talked about performance elements, and I'd like to just embellish on that just for a moment, if I can. The plaintiff's own expert said that the performance elements in these sound recordings were a cello, two cellos, a violin, a viola, cymbals, and something else that I don't even remember. So you can't even remember. Roberts. In Stairway to Heaven. No. In Taurus. In the spirit recording of Taurus, those are the performance elements that, under Newton versus Diamond, have to be excluded. Those are just the instruments. Now we have to start talking about something that no one's mentioned, which is timbre or tambre. It's pronounced both ways. That's the sound quality that identifies an instrument. If I play a middle C on a tuba, it sounds different than a middle C on an acoustic guitar. That's a very, very powerful thing that we as people recognize in music. So when you play a descending chromatic scale on an acoustic guitar with the same finger-picking technique, none of which is protected, it has a powerful resonance with people. And so that's why when people listen to this music, they think, well, that sounds similar. You're playing the same instrument, the same technique, and, you know, a descending chromatic scale, which is public domain. That's a real, real danger in misleading a jury. That's why they wanted to use the sound recordings. The ‑‑ Can you address ‑‑ I had a concern about the district court's failure to give a selection and arrangement jury instruction, which is certainly supported in the law. And there were facts in the record supporting it. I think both Dr. Stewart and Hanson testified that these unprotected elements when put together were original and protectable. I'm happy to address that. But first of all, there's a waiver issue. We put in a correct selection and arrangement instruction. They objected to it. The judge didn't give it. So they're basically in the position of saying, my God, we objected to this instruction. He didn't give it. And so now we're doing it. Well, the district court made clear that he didn't want any further objections. So it didn't seem like they had waived that. Well, yeah, but there's this ‑‑ first of all, the district court said that. But then if you look at the record, they continued to raise points as he was going through the instructions that he was giving. He was giving. And I think there's a difference between ‑‑ first, two things. There's a difference between objecting to an instruction, having it not given, and then saying, my God, it should have been given. And the second ‑‑ Did he propose a similar instruction? They did not. And this is ‑‑ we'll get to Judge Ikuda's point. They did not propose a selection and arrangement instruction. I thought he said he requested the instruction, you may find a combination of unprotectable elements to be protectable. Exactly right. It said 1968 of the excerpt to Breyer. So he did propose instruction, correct? Well, if I could get to that in just one second on the waiver issue, just to answer your prior question. There is a difference between objecting in the pretrial documents to my instruction and proposing what he proposed. And then at the finish of trial, when his associate is told, okay, you know, by the judge, these are the instructions I'm giving, you type them out, not standing up and saying, Your Honor, you skipped this instruction, the selection and arrangement instruction. That's a separate ground for the finding of waiver. Now, Satava and the law is clear. Feist is clear. There's protection in a selection and arrangement that puts public domain elements together in an original and unique way. That's not what they proposed. And that's not what their experts testified to. Their experts merely testified to a combination that there was a presence of these five elements that they claimed. That is not a selection and arrangement. So you're saying, as I read your brief, it seemed like you were saying because they used the word combinations of the word selection and arrangement, they were not entitled to the instruction. Is that your position? No. My position is one step more, that they never went further. They – Stairway to Heaven is a unique use of a descending chromatic scale because it has an ascending line, okay? And they pointed to two pairs of notes. It happens to be an A to B, you know. Okay. I don't understand the music theory, but I did understand in the testimony that they said the similarities are unique in combination. That's what Dr. Stewart testified, and that seemed close enough to me to be even if the individual elements are unprotected, when you put them together, they're unique in combination. So why wasn't that enough for – to get the instruction, assuming it's not a – Because he didn't tie them together. An arrangement implies a – that means a pattern. There has to be some interrelationship between them. There's an interrelationship between the ascending notes in Stairway to Heaven and the descending chromatic scale. They never testified, beyond the fact that they're present, to say that they are an original because of how they interact. And I can give you an example. If I have a – two companies have directories that show townspeople in a town by name, address, and telephone number, and one of them is organized by income level and the other one is organized by elementary school districts, you have to show how they're organized in the same way, and neither Mr. Hansen nor Dr. Stewart ever did that. There's also a very crucial point here. Counsel has repeatedly said that it was prejudicial for the jury to hear the treble clef of Taurus when they asked during deliberations to hear Taurus again. They – and throughout the brief, they say that was prejudicial. They couldn't hear that. That's bad. And that the similarity is in the bass clef. The selection and arrangement elements aren't in the bass clef. The bass clef only has the descending chromatic scale and one of the three pairs. The other two pairs, the majority of these pitch collections that he's talking about and the A, B, C, Do, Re, Mi are all in the treble clef. So your argument is that the testimony by Dr. Stewart and Dr. – and Mr. Hansen about the combination of the unprotected elements did not provide a sufficient factual basis for the instruction. Is that your position? That is true. And also, that – we asked for the instruction because it would have helped us. If he – if the Court had given a selection and arrangement instruction, he would have had to say they have to be organized, not just one. But both parties asked for the instruction. But the district court didn't give any reasoning why it eliminated it. That's correct. Okay. Thank you. But if we had gotten a selection and arrangement instruction, they would have had to have shown not substantial similarity, but virtual identity. And so they're not harmed at all. They got – they're better off without a selection and arrangement because instruction, because it would have changed the burden of proof. The – Well, the one thing – you know, just to follow – I don't mean to drive this, you know, to make much ado about this, but Instruction 20 did say, however, any elements from prior works of the public domain are not considered original parts and not protected by copyright. And that's exactly what slice says. So that says that you – it doesn't allow for a consideration combination. That was my concern, that the instructions that were given, including 20 and – I think there were another one that you cited – actually says you can't consider the unprotected elements. And so when the jury does their analytic dissection and they have to compare, they have to throw out all of the unprotected elements. But that's the law of the circuit. Right. But it's also the well-established, as we said in Three Boys, that a jury may find a combination of unprotectable elements to be protectable under the extrinsic test, and the jury was never instructed that they could do that. And they argued it, though. They – Dr. Stewart and Mr. Hansen both testified to it in closing argument that's what they said, that this was a combination and it was original and unique. They also complained that in our instruction, we didn't include it has to be novel It doesn't have to be novel. And – but they always argued it was novel. That's what they did. That was the whole theory of their case. The instruction would not have changed the result because they argued that anyway. Is there anything in the instructions as given that would preclude that argument to the jury? No. No. And they made the argument to the jury. Other than number 20, right? Yes, number 20. It's number 20. Number 20 would not allow them to consider that. But 20 is actually a model instruction of this Court, and it tracks Feist. I'd like to reserve just my one minute, but I would also like to say on the attorneys' fees issue, there were issues – there were legal errors in the Court's decision, including the interpretation of Petrella-Fraser, which we point out in the thing, and I'd better sit down or I won't have any reply time. Thank you. Thank you. To briefly address the issue of the jury instruction provided, we did preserve our position every step of the way, and we weren't going to fight with the Court when we felt that it was sufficiently preserved. You know, the big thing, as this Court is well aware, that jury instructions govern the case. It's the very last thing the jury hears to make their decision. We know from the Three Boys to Music, or Swirsky case, which is Swirsky's Ninth Circuit, 2004, every composition is a combination of protected and unprotectable elements in its most basic form. It's black-letter law that combinations or otherwise unprotectable elements are protectable if used in new and creative ways. The whole issue with Dr. Stewart is that he said that although we were able to show five distinct elements, minor chromatic line and associated chords, duration of pitches in minor chromatic line, melody placed over descending chromatic line, rhythm of steady eighth note beats, and a pitch collection, these five very distinct elements were never used in any prior art, and defendants were not able to show that in any way, shape, or form, that these five unique elements were used in this new and creative way. Lastly, the jury instruction on original was incorrect. Original means not copied. It doesn't mean that it wasn't used in prior art. Original can mean that it was in prior art or that it was used in the past. However, it has to be used in an original and a creative way. I have one minute left. I want to just address a couple of things. I know Your Honor had raised the issue of how Section 9 applies. When it comes to published copyrights on publication, Section 8, Section 11, excuse me, Section 11 is what has to be looked at. But when it comes to unpublished state common law, it cannot be shrunk by the deposit copy. And if you look to Section 3, Section 3 is what controls unpublished. Section 11 is what controls published works. And that's how we look at it. To finish up, and I only have a couple seconds here, Washington v. Pearson, 1939 case, the Copyright Office may destroy the deposit copy is incompatible with the notion that the deposit copy governs the subject matter of protected works. So that was a case where it was published by publication. The copyright was secured by publication, not by deposit, however. But it makes no difference, I think, from the analysis in the instance. Okay. Lastly, Goldstein v. California, 1973. It's significant because it means that mechanical recordings are evidence of the composition of a musical work. And in this instance, we have the very thing that everyone, no one disputes that it's the best evidence of what was in the mind of Randy California when he wrote the song. But we're comparing it with an artificial deposit copy rather than considering the actual composition embodying the sound recording. Okay. Thank you, counsel. Yes. We appreciate your arguments. He didn't really have anything to say about attorney's fees, so we don't need any rebuttal. That was well briefed. The attorney's fees issues are well briefed, and we've got all the arguments there on the attorney's fees issue. So thank you very much for your arguments this morning. We appreciate it. They're very helpful. Case is submitted at this time, and that ends our session for today. Have a good day.
judges: Paez, Ikuta, Vitaliano